THE STATE, EX REL. HURA, APPELLEE, *v.* BOARD OF EDUCATION OF BROOKFIELD LOCAL SCHOOL DISTRICT, APPELLANT, ET AL.

[Cite as State, ex rel. Hura, v. Bd. of Edn. (1977),
51 Ohio St. 2d 19.]

(No. 76-1136—Decided July 6, 1977.)

Mr. *Alan R. Kretzer,* for appellee.

Mr. *J. Walter Dragelevich,* prosecuting attorney, and Mr. *Edward L. Lavelle,* for appellant.

SWEENEY, J. The issue in the instant cause is whether Hura was entitled to a continuing contract for the 1974-1975 or 1975-1976 school years.

When a teacher becomes eligible for continuing service status under R. C. 3319.11, one of three things may occur with respect to his future employment status within the district.

In the first situation, he may be entitled to a continuing contract, as in the case where the board unqualifiedly re-employs him for the following year and thereafter. *State, ex rel. Grandy,* v. *Bd. of Edn.* (1971), 26 Ohio St. 2d 115.

In the second situation, he may be granted a limited service contract, not to exceed two years, provided that: (1) he has not previously attained continuing service status in another district, (2) written notice of the superintendent's intention to make such recommendation has been provided

to the teacher on or before April 30th, with reasons directed at the professional improvement of the teacher, and (3) written notice of the board's action upon recommendation of the superintendent has been given to the teacher on or before April 30th. The teacher will be deemed re-employed under a continuing contract if the board does not meet this April 30th deadline.

In the third situation, he may be denied re-employment for the following year, provided the board provides him proper notice of such action on or before April 30th. *De-Long v. Bd. of Edn.* (1973), 36 Ohio St. 2d 62; *Justus v. Brown* (1975), 42 Ohio St. 2d 53.

In the instant cause, the board passed a resolution, on April 29, 1974, voting not to re-employ Hura for the 1974-1975 school year, and there is no indication in the record that proper notice of such action was not given Hura on or before April 30th. Thus, having chosen not to re-employ Hura, the board took effective action preventing Hura from automatically being deemed re-employed under a continuing contract pursuant to R. C. 3319.11.

Since the board lawfully terminated Hura's employment in April of 1974, the issue then arises as to whether Hura, upon his re-employment in May of 1974, retained his eligibility for continuing service status.

R. C. 3319.11 provides in pertinent part that:

"Teachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district. * * *"

Thus, the statute requires that a teacher, to become eligible for continuing service status, must work three out of the past five years in the same school district, and no provision is made that after earning such eligibility, a teacher may completely lose it if he fails to be re-employed for a particular year.

For example, if a teacher begins work in a school district in year 1, and is subsequently re-employed in years 2 and 5, the fact that he is not re-employed in years 3 and 4

will not result in his losing credit for years 1 and 2. Once a teacher has achieved eligibility in year 5, the fact that he is not re-employed in year 6, will not result in his complete loss of status, when he subsequently is re-employed in the district.

To construe this part of R. C. 3319.11 otherwise, and hold that a teacher completely loses his eligibility for continuing service status once he is denied re-employment, would create a harsh result not provided for in the statute, nor intended by the General Assembly.

In the instant cause, Hura, having become eligible for continuing service status for the 1974-1975 school year, was denied re-employment in April of 1974. It is clear that when Hura was re-employed in May of 1974 for the 1974-1975 school year, he remained eligible for continuing service status.

Once it is determined that Hura remained eligible under R. C. 3319.11 for continuing service status, the issue then becomes whether the board could lawfully grant Hura a limited contract for the 1974-1975 school year, in May of 1974.

In carefully reading the statutory language of R. C. 3319.11, it should be noted that, as condition precedents for the granting of a limited contract, the statute contains two provisos which specifically require that certain actions be taken before April 30th. These provisos indicate that the General Assembly only provided for the situation in which the board makes a single determination as to the future employment status of a teacher for the following year. No provision is made for the situation, as present in this cause, where the board takes effective action by resolving not to re-employ a teacher before April 30th, but subsequently finds that it is able to re-employ the teacher for the following year.

Certainly, it cannot be contended that the board, in deciding not to re-employ Hura for the following year, made an irrevocable decision once the date of April 30th passed. Such an approach has no basis in the statute,

would directly contradict R. C. 3319.07 which places upon the board the ultimate responsibility of hiring teachers, and would result in the loss to the school board of needed flexibility in dealing with the ever-changing economic and social conditions of the school district.

Furthermore, it cannot be contended, in the present situation, that the board could only grant Hura a continuing contract once the April 30th deadline had passed, based on the assumption that it would be impossible for the board to comply with the provisions of R. C. 3319.11, requiring that certain steps be taken prior to April 30th before granting a limited contract. Such an approach completely overlooks the fact that the board, prior to April 30th, took effective action when it resolved not to re-employ Hura. That action was not a futile, meaningless act, since the board thereafter was under no further obligation to the teacher. See *Justus, supra; DeLong, supra.* Moreover, to contend that upon re-employment, the teacher must be given a continuing contract, could result in substantially impairing the board's ability to hire experienced and qualified teachers, a result clearly not intended by the General Assembly.

This court concludes that, in the situation where a board resolves before April 30th not to re-employ a teacher who is eligible for continuing service status, for the following year, but subsequently, because of a change of circumstances, desires to rescind its prior resolution, it may grant such teacher a limited contract. Thus, in the instant cause, the board could grant Hura in May of 1974 a limited contract for the 1974-1975 school year.

Having concluded that Hura remained eligible for continuing service status at the time of his re-employment in May of 1974, that he was not automatically entitled to a continuing contract for the 1974-1975 year at that time, and that the board properly offered Hura a limited contract for the 1974-1975 school year, this court must finally address itself to the issue of whether the board could properly decide not to re-employ Hura for the 1975-1976 school year in April of 1975.

R. C. 3319.11 specifically provides that once a teacher, eligible for continuing service status, has taught in the district under a limited contract, any subsequent employment must be on a continuing basis. However, such subsequent employment is not a statutory right provided the teacher, and the board may resolve not to re-employ the teacher for the following year.

In the instant cause, Hura, having taught under a one year limited contract for the 1974-1975 school year, was entitled to a continuing contract for the 1975-1976 school year if he were to be re-employed. However, the board decided, before April 30, 1975, not to re-employ Hura, and provided Hura proper notice of its action. Therefore, Hura had no right to a continuing contract for the 1975-1976 school year.

Because Hura presently has no right under R. C. 3319.11 to a continuing contract in the Brookfield Local School District, it was error for the Court of Appeals to grant the writ of mandamus. See *Anderson* v. *Bd. of Edn.* (1941), 137 Ohio St. 578; *State, ex rel. Finn,* v. *Garfield Heights* (1973), 34 Ohio St. 2d 5.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

LOCHER, J., dissents.

LOCHER, J., dissenting. R. C. 3319.11 explicitly dictates the manner by which a school board may grant a limited contract. In relevant part, R. C. 3319.11 reads:

"* * * The superintendent may recommend re-employment of such teacher * * * under a limited contract * * * provided that written notice of the intention to make such recommendation has been given to the teacher with reasons directed at the professional improvement of the teacher on or before the thirtieth day of April, and provided that

written notice from the board of education of its action on the superintendent's recommendation has been given to the teacher on or before the thirtieth day of April * * *. *If the board of education does not give such teacher written notice * * * before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract * * *."* (Emphasis added.)

It is not contended that the board complied with the above statutory condition precedents for the issuance of the limited contract. Instead, the board relied upon a subterfuge in an attempt to extirpate the mandates of R. C. 3319.11. The apparent function of R. C. 3319.11, to bring a necessary clarity to the rights of the school boards and teachers is advantageous to all—the board, the taxpayers, the teachers, and, most importantly, the students. The instant termination of employment during the contract negotiations between the board and the Federation of Teachers, with the subsequent limited rehiring, aptly demonstrates the uncertainty and the attendant caustic relationship between the board and teachers that acceptance of this proposed circumvention would create.

Adherence to the requirements expressed within R. C. 3319.11 leaves the board with final control in decisions of employment, subject only to the necessary procedural safeguards of the teachers. The board's contention is untenable in that it can not be inferred from the wording of R. C. 3319.11 and would render this provision ineffectual in the prevention of similar occurrences.

I must, therefore, respectfully dissent.