STRUTHERS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* STRUTHERS EDUCATION ASSOCIATION, APPELLANT.

[Cite as Struthers City Schools Bd. of Edn. *v.* Struthers Edn. Assn. (1983), 6 Ohio St. 3d 308.]

(No. 82-746—Decided August 31, 1983.)

*Messrs. Henderson, Covington, Stein, Donchess & Messenger* and *Mr. James L. Messenger,* for appellee.

*Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Mr. Eugene Green, Mr. Dennis Haines, Mr. Barry Laine* and *Mr. Ira J. Mirkin,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Mr. Robert T. Baker,* urging affirmance for *amicus curiae,* Ohio School Boards Association.

CLIFFORD F. BROWN, J. R.C. 3319.11 sets forth certain procedures which must be followed by a board of education when termination of a nontenured teacher's employment is contemplated. It provides in pertinent part:

"Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April. * * *"

In the present case we are called upon to decide whether certain negotiated procedural guarantees which go beyond those enunciated in R.C. 3319.11 are enforceable.

In *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223], this court recognized the basic authority of a board of education "to negotiate and to enter into a collective bargaining agreement with its employees, *so long as such agreement does not conflict with or purport*

*to abrogate the duties and responsibilities imposed upon the board of education by law."* Paragraph one of the syllabus. (Emphasis added.)

The question therefore becomes whether the fair dismissal policies contained in the instant collective bargaining agreement "conflict with or purport to abrogate" the school board's statutory authority to nonrenew limited teaching contracts under R.C. 3319.11. In deciding this question in the negative, we have looked not only to the specific contractual provisions at issue, but also to the underlying nature of R.C. 3319.11 as well as the realities of collective bargaining.

The mere fact that R.C. 3319.11 creates a statutory precondition to the nonrenewal of a nontenured teacher's contract by requiring delivery of written notice on or before April 30 of the board's intention not to re-employ, does not preclude a board of education from guaranteeing that teacher additional procedural safeguards when termination is contemplated. Instead, R.C. 3319.11 should be viewed as a teacher's protection statute designed to provide minimum procedural safeguards. Thus, contractually created procedural requirements relating to nonrenewal, contained in collective bargaining agreements and arrived at through open negotiation, are enforceable so long as the procedures do not directly conflict with R.C. 3319.11.[2] See *Ebert v. Bd. of Mental Retardation* (1980), 63 Ohio St. 2d 31 [17 O.O.3d 19]; *Jefferson Area Teachers Assn. v. Lockwood* (1982), 69 Ohio St. 2d 671 [23 O.O.3d 543].

The contractual provisions at issue did not directly conflict with R.C. 3319.11. Compliance with the fair dismissal procedure set forth in the collective bargaining agreement neither deprived the board of its statutory authority to nonrenew without assigning a cause nor changed the procedure for terminating a limited employment contract. Regardless of the strength or validity of the reasons which may have been given for the proposed decision, the board's right to nonrenew remained unimpaired. Nothing under the contract precluded the board from deciding to nonrenew D'Alesio's contract once it provided written reasons for its decision or acquiesced in the teacher's request for a hearing.

Appellee argues that inasmuch as the school board has the exclusive authority to hire and fire teachers, the arbitrator usurped this authority by awarding reinstatement and back pay. Such a contention, however, mischaracterizes the role which was played by the arbitrator in resolving the present dispute between the board and the association.

It was not the arbitrator who controlled the status of D'Alesio's employment. The arbitrator was merely enforcing a specific clause of the contract by which the board had agreed to abide. The arbitrator's decision did not divest the board of its power to control employment relationships with its

---

[2] By way of illustration, a provision in a collective bargaining agreement calling for written notice to be sent before the *first day of May* would conflict with R.C. 3319.11. Conversely, a provision calling for such notice to be sent before the *twenty-ninth day of April,* would not.

teachers; it simply remedied the board's breach of contract. The fact remains that throughout the history of this case, the ultimate decision to hire or fire remained with the board; the arbitrator merely sought to require the board to do what it had agreed to do in the first place under the contract.[3]

Neither the explicit language of the statute nor our holding in *Dayton Teachers Assn., supra,* requires us to conclude that the procedures set forth in R.C. 3319.11 cannot be supplemented by negotiation. The parties here, presumably acting in good faith, formally agreed to the fair dismissal policy at issue. In the absence of any direct conflict with the law, this court is reluctant to render unenforceable those terms of a contract which were arrived at through open negotiation at a bargaining table. Finding no conflict in the present case, the board of education is bound to honor its contract.

The judgment of the court of appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., dissents.

LOCHER and HOLMES, JJ., dissent separately.

HOLMES, J., dissenting. The opinion of the majority here does a great disservice to the administration of our school systems throughout Ohio. In so doing, it misconstrues the applicable statutory law regarding the authority of school boards, and is contrary to prior decisional law of this court in this specific regard.

In arriving at its conclusion, the majority overlooks, or at least applies little significance to, three important factors which should control the court's determination. First, the teacher who is involved in this appeal, and others similarly affected by the collective bargaining provisions here construed, was hired pursuant to a *limited,* rather than a continuing contract. Under the Ohio statutory scheme for the employment of teachers, as set forth in R.C. 3319.08, there are two types of contracts which a teacher may hold — limited and continuing. The primary difference between these two types of contracts is that a limited contract is for a stated term of years, while a continuing contract remains in effect until the teacher resigns or retires, or until the contract is terminated or suspended by the employing board. A teacher having a limited contract may become eligible for continuing service status in any

---

[3] In reaching this result we emphasize that this is not a situation in which the arbitrator was called upon to evaluate the substance of the charges against the teacher or the propriety of his dismissal. Had that been the case and had the board followed the procedures as outlined in its contract, any decision to reinstate with back pay would have been beyond the scope of the arbitrator and would have directly conflicted with the school board's statutory authority to control employment relationships with its teachers.

school district by obtaining the necessary teacher qualification as to certification. Here, the teacher involved had not obtained the necessary teacher qualification for a continuing contract.

Second, it must be kept in mind that this case does not involve a *termination* of a teacher's contract, but involves the *nonrenewal* of a limited teaching contract. Neither a continuing nor a limited contract may be terminated without providing the teacher with the protections in R.C. 3319.16, including grounds for termination and a hearing. Because the cause *sub judice* involves only the nonrenewal of a limited contract, the authority vested in the boards of education in Ohio is found in and controlled by R.C. 3319.11, which, in pertinent part, states:

"Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April. * * *"

This section grants to Ohio school boards broad discretion in the renewal or nonrenewal of limited teaching contracts. All that is required of the boards in the nonrenewal of a limited teaching contract is the notification of the teacher in question on or before April 30th of the year in which the contract is due to expire.[4]

Third, it must be remembered that the General Assembly has delegated a number of specific responsibilities in the management of Ohio's school system to boards of education, among which is the hiring, renewing, and nonrenewing of the contracts of public school teachers. Further, these powers, as delegated by the General Assembly to the school boards, can not be abrogated, nor expanded, by those boards. Accordingly, in the case of *Verberg* v. *Bd. of Edn.* (1939), 135 Ohio St. 246 [14 O.O. 97], this court had occasion to consider the extent of the authority of school boards regarding school district employees. This court stated at pages 248-249:

"Boards of education are created by statute, and their jurisdiction is conferred only by statutory provision. Just as any other administrative board or body, they have such powers only as are clearly and expressly granted. * * *

"Such boards cannot increase their powers or confer upon themselves additional jurisdiction under authority conferred to adopt rules and regulations for their government and the government of their employees. * * *"

---

[4] It may be noted that in *Tracy* v. *Otsego Bd. of Edn.* (1983), 6 Ohio St. 3d 305, we recently held that the notice must also state the basic reason for the nonrenewal, although cause and a hearing would not be mandated by that decision.

Also, there are certain state and federal laws which would prohibit a board of education from nonrenewing a teacher's contract on the basis of race, sex, age, national origin, or from infringing upon a teacher's constitutionally protected rights.

The same principle was applied by this court in the much cited case of *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223], wherein the court held that boards of education could negotiate and enter into collective bargaining agreements with their employees, but that the authority to enter into contracts was not unbridled. Rather, the boards are required to fulfill the obligations imposed upon them by law. Accordingly, the first paragraph of the syllabus in *Dayton Teachers* is as follows:

"A board of education is vested with discretionary authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law."

Thus, according to this court's determination in *Dayton Teachers,* it would be within the policy-making power of the board to enter into such agreement so long as the provisions thereof are not contrary to law.

Here, Article XXVI (B)(2) of the collective bargaining agreement between the teachers' association and the board is, in my view, contrary to law. It provides that certified staff members may be dismissed or not re-employed only after so-called fair practices have been followed. Article XXVI (D) of the agreement provides, in pertinent part:

"If it should become necessary to institute dismissal proceedings against any certified staff member, certain procedures must be followed to insure fairness. The standards set forth below should represent the minimal standards for fair dismissal:

"* * *

"4. Any certified staff member who is to be dismissed, by either contract termination proceedings or non-renewal of a contract, should have written notice of the administration's intended action.

"5. Receipt of notice should be followed by a termination conference during which time the certified staff member may discuss the dismissal decision. The conference should be made a matter of written record with the time and date included.

"6. The certified staff member has the right to reply to charges if so desired within a specified amount of time.

"7. Any certified staff member, who has been notified of intent of [*sic*] dismiss, may request a hearing at which he or she will have the opportunity to confront and cross-examine hostile witnesses and to rebut evidence introduced against him or her as well as present witnesses and evidence in his or her own behalf. Existing Ohio Law, provides for such a hearing in contract termination matters, providing the certified staff member makes written request within the 10 days of receipt of the notice of intent to terminate. The existing Ohio Law makes no provision for hearing in matters involving non-renewal of limited contracts. (O.R.C. 3319.08)."

Clearly, these provisions impose severe restrictions on the discretion vested in the Struthers School Board with respect to nonrenewal of teachers

under limited contracts. The required demonstration of good cause required by the "fair dismissal" procedures is not imposed on the board by R.C. 3319.11, and is in conflict therewith. Nowhere in R.C. 3319.11 is a school board empowered to implement a "fair dismissal" procedure whereby teachers' limited contracts can only be nonrenewed following extensive evaluations, hearings, and for good cause shown. Further, these requirements in effect are contrary to the statutory scheme of teacher tenure in Ohio. The system of tenure is designed to protect qualified teachers in our public elementary and secondary schools from arbitrary and unwarranted interference with their employment status. The provisions of the agreement here are clearly an attempt to extend the protection of the tenure laws to individuals who have not taken the steps necessary to qualify themselves for tenured status under R.C. 3319.11. The majority opinion here effectively precludes what in the past have been very valid objectives of the nonrenewal process. These objectives gave school boards the discretion to employ teachers in a probationary position under limited contracts allowing the boards the necessary flexibility with regard to their teaching staff. Further, the existence of limited contracts enabled school boards to confront the recurring problems of insufficient operating funds, and provided the flexibility of nonrenewal of teachers' contracts for budgetary requirements.

In conclusion, boards of education are agencies of government created by statute. They may carry out only those functions which are provided by the General Assembly. School boards have been provided by law with clear statutory mandates in regard to teacher tenure. The renewal and nonrenewal of limited contracts for teachers is a process which is expressly and exclusively defined by statute. Extensive procedures for hearings and establishing the course for nonrenewal may not lawfully be written into collective bargaining agreements between teachers associations and school boards in Ohio. Any attempt, as here, is contrary to law, and an arbitrator's award following such a hearing must be declared unlawful and vacated.

Accordingly, I would affirm the judgment of the court of appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.