THE STATE, EX REL. LEE, APPELLANT, *v.* BELLEFONTAINE CITY BOARD OF EDUCATION, APPELLEE.

[Cite as State, ex rel. Lee, *v.* Bellefontaine Bd. of Edn. (1985), 17 Ohio St. 3d 124.]

(No. 84-1255—Decided May 22, 1985.)

*Cloppert, Portman, Sauter & Latanick, Frederick G. Cloppert, Jr.,* and *Susanne R. Blatt,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., John C. Burkholder* and *Kimball H. Carey,* for appellee.

CLIFFORD F. BROWN, J. The sole issue before the court involves the interpretation of R.C. 3319.11. Under R.C. 3319.11, a board of education may exercise one of three options when a teacher has met the conditions prerequisite for employment under a continuing contract. The board may (1) unqualifiedly re-employ the teacher under a continuing contract; (2) re-employ the teacher under a "limited contract" for no more than two years, provided certain statutory requirements are met; or (3) not renew the teacher's contract, so long as written notice is given to the teacher by April 30. See *State, ex rel. Hura,* v. *Bd. of Edn.* (1977), 51 Ohio St. 2d 19, 21-22 [5 O.O.3d 10]. There is no dispute that relator had become eligible for a continuing contract.

R.C. 3319.11 in part expressly provides:
"* * *

"Upon the recommendation of the superintendent that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing service status has not previously been attained elsewhere, under a limited contract for not to exceed two years, *provided that written notice of the intention to make such recommendation has been given to the teacher with reasons directed at the professional improvement of the teacher on or before the thirtieth day of April,* and provided that written notice from the board of education of its action on the superintendent's recommendation has been given to the teacher on or before the thirtieth day of April, but upon such subsequent re-employment only a continuing contract may be entered into. If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed

two years before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract at the same salary plus any increment provided in the salary schedule. * * *
"* * *

"The failure of a superintendent of schools to make a recommendation to the board of education under any of the conditions set forth in this section, or the failure of the board of education to give such teacher a written notice pursuant to this section shall not prejudice or prevent a teacher from being deemed re-employed under either a limited or *continuing contract* as the case may be under the provisions of this section." (Emphasis added.)

The superintendent attempted to qualify his recommendation for re-employment of relator by suggesting the board enter into another limited contract rather than a continuing contract with relator. However, the trial court found that the superintendent failed to comply with the mandatory prerequisites of R.C. 3319.11, in that the superintendent did not give the teacher written notice of his intention to make a recommendation to the board that relator be given a limited contract along with reasons directed at her professional improvement. The trial court found that the giving of such written notice is a prerequisite to a valid recommendation of a limited contract so that, in the absence of such written notice, the recommendation of the superintendent must be deemed a nullity under R.C. 3319.11. This means that in such event the board had only two options as to the issuing of a contract to relator. The board could either re-employ the relator under a continuing contract for which she was eligible or it could determine not to renew her contract.

Where a teacher who is eligible for continuing service status is re-employed, the failure of the superintendent to meet the mandatory requirements of R.C. 3319.11, to give to the teacher a written notice of his intention to make a recommendation of a limited contract, causes his recommendation of a limited contract to the board to be ineffective and does not constitute a recommendation within the purview of the second sentence of the second paragraph of R.C. 3319.11. Upon re-employment such teacher has a statutory right to a continuing contract.

The last paragraph of R.C. 3319.11 expressly provides:

"The failure of a superintendent of schools to make a recommendation to the board of education * * * shall not prejudice or prevent a teacher from being re-employed under * * * a * * * continuing contract * * *."

There is a second reason that relator has a right to a continuing contract. The delivery on April 23, 1982, by the board of a one-year limited contract was not preceded by any prior written notice from the board to the relator that it decided to act on the superintendent's recommendation that relator be given a limited contract. This failure to fulfill the mandatory requirement of R.C. 3319.11 that the board must give written notice to a teacher of its decision to act on the superintendent's recom-

mendation that she be given a limited contract nullifies the limited contract. Such mandatory requirement is contained in the following applicable portion of R.C. 3319.11 as follows:

"'* * * and provided that written notice from the board of education of its action on the superintendent's recommendation has been given to the teacher on or before the thirtieth day of April, * * *. If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed two years before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract. * * *'"

Although a board of education has the final responsibility for employing teachers, it must do so within the statutory confines and has no power to restrict the contract of a re-employed teacher eligible for continuing service status to a limited contract unless a valid recommendation from the superintendent has been received recommending such limited contract. Since the board chose to re-employ relator, it did so under a continuing contract by operation of law.

Therefore the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY and LOCHER, JJ., concur.

DOUGLAS, J., concurs separately.

HOLMES and WRIGHT, JJ., dissent.

DOUGLAS, J., concurring. I concur in today's opinion, but write separately to more fully develop the argument made by the majority. The issue in this case is whether the procedure utilized by the school system to notify appellant of the superintendent's recommendation to the board was in compliance with the mandatory provisions of R.C. 3319.11.

The board argues, in effect, that appellant had constructive notice of the superintendent's recommendation, and the reasons therefor through the superintendent's agent, the school principal. The board's argument is unsound because it fails to recognize the purpose behind the R.C. 3319.11 technical notice requirements and because it fails to recognize that R.C. Chapter 3319 imposes mandatory obligations on both school boards and teachers. Adherence to these mandatory obligations is necessary if Ohio's school systems are to operate in a uniform, efficient fashion.

It seems clear to me that the R.C. 3319.11 notice provisions are designed to give teachers *actual* notice of the superintendent's recommendation to the school board, and the reasons for the recommendation. If the mandated procedures are followed, the teacher will be ensured a fair opportunity to prepare a response to the superintendent's recommendation,

and present the teacher's response to the school board. If the dictates of the statute are followed, the school board will have the opportunity to review the position and contentions of the teacher as well as those of the superintendent before deciding to accept or reject the superintendent's recommendation.

In the case before us, appellant never received actual notice of the superintendent's recommendation and his reasons for so recommending. What appellant received was another's good faith opinion of what the superintendent's report to the board would contain. It is unfair to expect appellant to prepare a response based on another's opinion of what the superintendent might recommend. As well as the requirements of R.C. 3319.11, traditional notions of fair play require that a teacher be given notice that apprises the teacher of the superintendent's recommendation and affords the teacher an opportunity to present a response. See *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314.

It is not an unfair burden to require school boards and superintendents to follow precisely the terms of the statute. R.C. Chapter 3319 imposes mandatory obligations on teachers as well. R.C. 3319.15 provides:

"No teacher shall terminate his contract after the tenth day of July of any school year or during the school year, prior to the termination of the annual session, without the consent of the board of education; and such teacher may terminate his contract at any other time by giving five days' written notice to the employing board. Upon complaint by the employing board to the state board of education and after investigation by it, the certificate of a teacher terminating his contract in any other manner than provided in this section may be suspended for not more than one year."

Non-compliance by a teacher with the requirements for contract termination can result in a very severe penalty. Is it likely that the Bellefontaine City Board of Education would waive the above-quoted mandatory notice requirements and adopt a policy that teachers may terminate their contracts by giving *constructive notice* to the board, as opposed to the "five days' written notice" required by the statute? Obviously, the General Assembly adopted these statutes so that both school boards and teachers would avoid arbitrary actions, and the employment relationship between such parties would be clear, unequivocal and fair — fair to *teachers* as well as school boards.

For the foregoing reasons, the judgment of the court of appeals must be reversed.

HOLMES, J., dissenting. I dissent herein due to the majority's extremely hypertechnical and ill-advised interpretation of R.C. 3319.11. In my view, the notice concerning the superintendent's recommendation was sufficient under the statutory requirements and, assuming *arguendo* that it was not sufficient, the statute fails to provide a remedy therefor.

R.C. 3319.11 mandates that a teacher be provided written notice of

the superintendent's recommendation and supporting reasons by the thirtieth day of April. However, the statute does not address the mode of delivery or actual content of the notice.

I believe a superintendent should be allowed to delegate to a school principal the ministerial task under R.C. 3319.11 of giving notice to a teacher of the superintendent's intention not to recommend a continuing contract. See *Peck* v. *Bd. of Edn. of Yuma Union High School Dist.* (App. 1980), 126 Ariz. 113, 612 P. 2d 1076. From the record it is clear that Superintendent Robert W. Carter met with Principal Leonard Gleason to discuss relator's contract status on April 7, 1982. Both men agreed that a one-year limited probationary contract was warranted. Carter then requested that Gleason meet with relator to advise her of the former's intended recommendation as well as his reasons directed at her professional improvement.

On April 14, 1982, Gleason met with relator to discuss her contract. At this meeting relator was told of the superintendent's proposed recommendation and given an evaluation form which indicated the reasons underlying the recommendation. This written notice was believed by school authorities to satisfy the statute.

The clear import of this portion of R.C. 3319.11 is to provide a teacher with sufficient notice relative to the superintendent's proposed recommendation, and the reasons which support such recommendation. Relator was, without a doubt, provided actual notice of these facts. In my view, the notice, which fairly informed her of the superintendent's recommendation, was reasonably sufficient as it is in substantial compliance with the statute. See *Hoover* v. *Wagner Community School Dist.* (S.D. 1984), 342 N.W. 2d 226; *Allred* v. *Little Rock School Dist.* (1981), 274 Ark. 414, 625 S.W. 2d 487.

Furthermore, it is my opinion that the court of appeals correctly reversed the trial court's award of a continuing contract to relator for the simple reason that R.C. 3319.11 does not provide a remedy for any such alleged wrong. The statute grants a continuing contract only if the board of education's notice is not timely delivered. In pertinent part, the provision states:

"* * * If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed two years before the thirtieth day of April, such teacher is deemed reemployed under a continuing contract * * *."

In what I consider shallow reasoning, the majority compounds its error by pointing to the last paragraph of the statutory provision in affirming relator's award of a continuing contract. This paragraph states:

"The failure of a superintendent of schools to make a recommendation to the board of education * * * shall not prejudice or prevent a teacher from being re-employed under * * * a * * * continuing contract * * *."

Here, however, we are not faced with the failure of a superintendent

to make a recommendation to the board of education as provided in the statute. Neither party argued that the superintendent failed to make such recommendation. In fact, the record is quite clear that on April 19, 1982 the board voted to accept Superintendent Carter's recommendation that relator be awarded a limited contract. I simply cannot justify the majority's conclusion based on a reading of R.C. 3319.11.

Finally, the majority attempts to bolster its decision by stating that the board's notice of the limited contract itself is not sufficient pursuant to the provision quoted above. I believe all that is statutorily required of the board is to provide written notice to the teacher of its action on the superintendent's recommendation: namely, whether he or she will be reemployed, by the thirtieth day of April. This court has previously stated that "[w]hile R.C. 3319.11 requires written notice, it does not specify the manner or mode in which it must be served. Under this circumstance, Ohio has long followed the rule set forth in the second paragraph of the syllabus in *Moore* v. *Given* (1884), 39 Ohio St. 661, which states '[w]here a statute requires notice of a proceeding, but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement.' " *State, ex rel. Peake,* v. *Bd. of Edn.* (1975), 44 Ohio St. 2d 119, 122 [73 O.O.2d 437]. Certainly, the contract suffices as actual notice of the board's action.

The majority opinion in this regard now seems to mandate that after a board of education votes to accept a superintendent's recommendation by awarding a limited contract, it must immediately provide the teacher with notice of its action before the limited contract is delivered. This *ex post facto* notice requirement does not, in any way, assist the aggrieved teacher as the board has already conclusively voted on his or her continuing employment. Based upon the plain language of R.C. 3319.11, the General Assembly did not intend to require the additional and futile act.

Accordingly, I would affirm the judgment of the court of appeals.

WRIGHT, J., dissenting. I concur in Justice Holmes' thorough, well-reasoned dissent. I fully agree that the notice provided the appellant by the superintendent of schools satisfies the requirements of Ohio law. Appellant's principal timely informed her that the superintendent would recommend her for a one-year probationary contract. The reasons for the probationary status were embodied within a detailed evaluation checklist which was given to the appellant. The majority does not dispute that the principal acted as an agent for the superintendent or that appellant received written notice of her proposed probationary status.

The majority has indeed elevated form over substance. It is beyond cavil that the appellant was fully aware of the reasons for the decision by appellee and was in no way prejudiced by *any* of the procedures followed by *any* of the actors in this particular controversy.

Accordingly, I dissent.