THE STATE, EX REL. ROLLINS, APPELLEE, *v.* BOARD OF EDUCATION
FOR THE CLEVELAND HEIGHTS-UNIVERSITY HEIGHTS
CITY SCHOOL DISTRICT, APPELLANT.

[Cite as State, ex rel. Rollins, *v.* Cleveland Hts.-University Hts. Bd. of Edn.
(1988), 40 Ohio St. 3d 123.]

(No. 87-1752—Submitted September 28, 1988—Decided December 28, 1988.)

*Berkman, Gordon, Murray & Palda, George W. Palda* and *Jeremy A. Rosenbaum,* for appellee.

*Squire, Sanders & Dempsey, David J. Millstone* and *David T. Musselman,* for appellant.

H. BROWN, J. In order to grant a writ of mandamus, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law. *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. The pivotal issue in this case is whether Rollins had a clear legal right to a continuing contract (*i.e.,* tenure) as of the 1986-1987 school year.[1] We find that she did not.

I

Under the collective bargaining agreement, eligibility for tenure is conditioned upon a recommendation of tenure by the teacher's principal. Rollins did not receive such a recommendation for the 1986-1987 school year.

Under R.C. 3319.11, the recommendation of a principal is not a prerequisite to tenure eligibility. R.C. 3319.11 provides in relevant part that "[t]eachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district * * *." It is undisputed that Rollins met the statutory requirements for tenure eligibility.

Thus we must decide whether the eligibility requirements to secure continuing service status (established by R.C. 3319.11) can be increased by a collective bargaining agreement.

The bargaining agreement was entered into in January 1986, after the effective date of R.C. Chapter 4117, Ohio's collective bargaining Act. R.C. Chapter 4117 reshapes the law governing the relationship between public employers and employees. *Local 4501* v. *Ohio State Univ.* (1986), 24 Ohio St. 3d 191, 195, 24 OBR 420, 423, 494 N.E. 2d 1082, 1086.

Under R.C. 4117.10(A), on matters of wages, hours, or terms and con-

---

[1] If an unconditional limited contract is granted to a teacher qualified to receive a continuing contract, that teacher is entitled to a writ of mandamus ordering the issuance of a continuing contract. *State, ex rel. Voss,* v. *Northwest Local Bd. of Edn.* (1981), 66 Ohio St. 2d 274, 276-277, 20 O.O. 3d 267, 268-269, 421 N.E. 2d 516, 518, citing *State, ex rel. Gandy,* v. *Bd. of Edn.* (1971), 26 Ohio St. 2d 115, 55 O.O. 2d 209, 269 N.E. 2d 605; see, also, *State, ex rel. Lee,* v. *Bellefontaine City Bd. of Edn.* (1985), 17 Ohio St. 3d 124, 17 OBR 271, 477 N.E. 2d 1135.

ditions of employment, a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevails over a conflicting law unless such law falls within one of the exceptions listed in R.C. 4117.10(A).[2] *Jurcisin* v. *Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St. 3d 137, 143, 519 N.E. 2d 347, 352-353.[3]

Provisions defining eligibility for tenure are clearly "terms and conditions" of employment within the meaning of R.C. 4117.10(A). Therefore, provisions in a collective bargaining agreement pertaining to eligibility for tenure will prevail over R.C. 3319.11, unless R.C. 3319.11 comes within one of the exceptions listed in R.C. 4117.10(A).

One of the listed exceptions is that a collective bargaining agreement will not prevail over laws pertaining to "minimum educational requirements contained in the Revised Code pertaining to public education." R.C. 4117.10(A). Rollins contends that R.C. 3319.11 fits within this exception.

The phrase "minimum educational requirements" is not defined in R.C. Chapter 4117. Nor is it used or defined in the education sections of the Revised Code.

The Revised Code does refer to "educational requirements" and "the minimum standards of the state board of education and requirements set forth in the Revised Code" in several sections of R.C. Title 33. See R.C. 3301.07(D) ("* * * regular procedures shall be followed for promotion from grade to grade of pupils who have met the educational requirements prescribed."); R.C. 3313.487(A) ("* * * the superintendent of public instruction shall analyze the district's financial condition and ascertain what elements of the district's educational program exceed or fail to meet the

---

[2] R.C. 4117.10(A) provides in part:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. Laws pertaining to civil rights, affirmative action, unemployment compensation, workers' compensation, the retirement of public employees, residency requirements, the minimum educational requirements contained in the Revised Code pertaining to public education including the requirement of a certificate by the fiscal officer of a school district pursuant to section 5705.41 of the Revised Code, and the minimum standards promulgated by the state board of education pursuant to division (D) of sec-

tion 3301.07 of the Revised Code prevail over conflicting provisions of agreements between employee organizations and public employers."

[3] See, also, *State, ex rel. Darvanan,* v. *Youngstown* (Jan. 27, 1987), Mahoning App. No. 85 C.A. 131, unreported (agreement prevails over R.C. 124.31[A]); *Hayburn* v. *Jayjohn* (Nov. 24, 1987), Jackson App. No. 544, unreported (agreement prevails over R.C. 109.71 *et seq.*); 1988 Ohio Atty. Gen. Ops. No. 88-016 (agreement would prevail over R.C. 124.17); 1985 Ohio Atty. Gen. Ops. No. 85-075, at 2-295, fn. 2 (agreement would prevail over R.C. 124.382); O'Reilly, Ohio Public Employee Collective Bargaining (1984) 173-174; Lewis & Spirn, Ohio Collective Bargaining Law (1983) 70-71; Baker, 1988-89 Handbook of Ohio School Law (1987) 69, Section 3.38; 3 Lewis, Jollay & Buchter, Baldwin's Ohio School Law (1987) 147, Section T18.20; Larson, Bumpass, Ashmus & Ward, Public Sector Collective Bargaining: The Ohio System (1984) 69.

minimum standards of the state board of education and requirements set forth in the Revised Code * * *"); R.C. 3313.488(A) ("* * * the district will not incur any expenses that will further impair its ability to operate an instructional program that meets or exceeds the minimum standards of the state board of education and requirements of the Revised Code * * *").

Considering the words "minimum educational requirement" in the ordinary sense of their meaning and in the context of the code provisions relating to education, we believe those words do not include the teacher tenure provisions of R.C. 3319.11. Teacher tenure does have an educational benefit,[4] but it is not a minimum requirement. Rather, the words "minimum educational requirement" seem to indicate an intent by the General Assembly to designate laws which *directly affect* the quality or quantity of instruction received by students[5] and which mandate essential conditions related to such instruction. Examples include: the required curriculum (R.C. 3313.60[A]), the requirements for promotion from one grade to another (R.C. 3313.60), and the minimum number of days in a school year (R.C. 3313.48).[6]

R.C. 4117.10(A) has been consistently interpreted by the lower courts and the Attorney General to allow a collective bargaining agreement to prevail over a conflicting provision in R.C. Chapter 3319. See, *e.g., Alexander Local School Dist. Bd. of Edn.* v. *Alexander Local Edn. Assn.* (1987), 41 Ohio App. 3d 13, ____ N.E. 2d ____ (agreement prevails over R.C. 3319.01); *Lilley* v. *Cuyahoga Falls City School Dist. Bd. of Edn.* (June 4, 1986), Summit App. No. 12489, unreported (agreement prevails over R.C. 3319.17); *Stone* v. *Madison Local School Dist. Bd. of Edn.* (Oct. 14, 1986), Richland App. No. CA-2396, unreported (agreement prevails over R.C. 3319.17); 1987 Ohio Atty. Gen. Ops. No. 87-041 (agreement would prevail over R.C. 3313.64 and 3317.08). At least one lower court has specifically held that R.C. 3319.11 is not a law pertaining to minimum educational requirements. *State, ex rel. Williams,* v. *Belpre City School Dist. Bd. of Edn.* (1987), 41 Ohio App. 3d 1, ____ N.E. 2d ____.

Further, the primary purpose of R.C. 3319.11 is to protect the teacher. In *State, ex rel. Bishop,* v. *Mt. Orab Village School Dist. Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494,

---

[4] *Powell* v. *Young* (1947), 148 Ohio St. 342, 359, 35 O.O. 322, 329, 74 N.E. 2d 261, 269; *State, ex rel. Hura,* v. *Bd. of Edn.* (1977), 51 Ohio St. 2d 19, 26, 5 O.O. 3d 10, 14, 364 N.E. 2d 864, 868-869 (Locher, J., dissenting).

[5] The version of the collective bargaining bill reported to the Ohio Senate by the Senate Commerce and Labor Committee provided that "[l]aws pertaining to * * * the *requirements* contained in the Revised Code pertaining to public education * * *" prevail over conflicting provisions of a collective bargaining agreement. (Emphasis added.) Sub. S.B. No. 133 (1983). The bill was later amended by the House Commerce

and Labor Committee to provide in its present form that laws pertaining to "* * * *minimum educational requirements* contained in the Revised Code pertaining to public education * * *" prevail over conflicting agreements. Am. Sub. S.B. No. 133 (140 Ohio Laws, Part I, 336, 352); R.C. 4117.10(A). (Emphasis added.)

[6] In Ohio Administrative Code Chapter 3301-35, the State Board of Education has set out minimum standards for elementary and secondary schools. The standards cover areas such as curriculum, pupil progress reports, and graduation requirements. Ohio Adm. Code 3301-35-02.

498-499, 40 N.E. 2d 913, 919, this court noted that:

"* * * [L]egislation in the form of teachers tenure acts has been enacted by a number of states for the protection of those established and qualified in the teaching profession and to prevent their arbitrary dismissal. Such legislation bears a resemblance to the older civil service laws * * *."

The court adopted the following language in describing the purpose of the Ohio Teacher Tenure Act:

" 'The very laudable purpose of this act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the "vicissitudes of politics" or the likes or dislikes of those charged with the administration of school affairs.

" 'Such being the manifest purpose of the act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries.' " *Id.* at 439, 22 O.O. at 499, 40 N.E. 2d at 919, quoting *Marshall Cty. Bd. of Edn.* v. *Baugh* (1941), 240 Ala. 391, 395, 199 So. 822, 825. See, also, McCarthy & Cambron, Public School Law: Teachers' and Students' Rights (1981) 28.

In *Struthers City Schools Bd. of Edn.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, 310, 6 OBR 368, 370, 453 N.E. 2d 613, 615, we noted that "* * * R.C. 3319.11 should be viewed as a teacher's protection statute designed to provide minimum procedural safeguards."

For the above reasons, we find that R.C. 3319.11 is a teacher-protection statute and not a law pertaining to minimum educational requirements under R.C. 4117.10(A).

Finally, as we stated in *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 384, 18 OBR 437, 439, 481 N.E. 2d 632, 634, "* * * R.C. 4117.10(A) was designed to free public employees from conflicting laws which may act to interfere with the newly established right to collectively bargain." Collective bargaining is not a one-way street. We are not inclined to emasculate collective bargaining in public school employment. Unless a *minimum educational requirement* is at stake, one side cannot be released from the bargain while the other side is bound. By providing that the contract governs conditions of employment, the General Assembly has indicated its preference for enforcing those terms of an agreement which were arrived at through open negotiation at the bargaining table, regardless of which party is advantaged.

Since Rollins did not receive a recommendation of tenure from her principal as required under the collective bargaining agreement, she was not eligible for tenure for the 1986-1987 school year and does not have a clear legal right to a continuing contract.

## II

Rollins also contends that the tenure eligibility requirements of the bargaining agreement were not intended to waive statutory rights. The contractual provisions were, she claims, intended merely to set forth guidelines to inform bargaining unit members of the usual method of obtaining tenure. She notes that the tenure eligibility section of the agreement is unchanged from prior agreements between the parties dating back to 1972, when it was unlawful for the board to add to the statutory eligibility requirements.[7]

---

[7] For collective bargaining agreements entered into prior to April 1, 1984, we have

Rollins argues that the parties intended to act according to the law as it existed when they adopted the language at issue. We reject this contention. First, this argument rests upon an interpretation of the collective bargaining agreement. As such, it is subject to the grievance procedure established by the agreement, including binding arbitration. Rollins could have initiated and processed a grievance without union support. Therefore, Rollins had an adequate remedy at law for resolving that issue. See *State, ex rel. Bardo,* v. *Lyndhurst* (1988), 37 Ohio St. 3d 106, 112-113, 524 N.E. 2d 447, 453-454.

Second, the relevant bargaining agreement was entered into after April 1, 1984, the controlling date for applying R.C. 4117.10(A). By its plain terms, the agreement conditions a teacher's eligibility for tenure upon a recommendation from the teacher's principal. Where the terms of a contract are clear and unambiguous, extrinsic evidence may not be used as an aid in interpretation. *Whitley* v. *Canton City School District Bd. of Edn.* (1988), 38 Ohio St. 3d 300, 301, 528 N.E. 2d 167, 168, citing *Rose* v. *New York Life Ins. Co.* (1933), 127 Ohio St. 265, 273, 187 N.E. 859, 862.

Since Rollins has not established a clear legal right to a continuing contract, she is not entitled to a writ of mandamus. Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

LOCHER, J., concurs in the syllabus and judgment only.

SWEENEY and DOUGLAS, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. While I concur in the syllabus and much of the language used in the majority opinion, I dissent from the majority's ultimate decision as it seems to be contrary to some of the persuasive language used in the opinion.

I would grant the writ for a continuing contract and, collaterally, call attention to parts of the majority decision in *Rocky River* v. *State Emp. Relations Bd.* (1988), 39 Ohio St. 3d 196, 530 N.E. 2d 1, which are clearly inapposite to portions of today's majority opinion.

SWEENEY, J., concurs in the foregoing opinion.

---

held that the eligibility requirements for continuing contract status cannot exceed those provided in R.C. 3319.11. *State, ex rel. Brown,* v. *Milton-Union Exempted Village Bd. of Edn.* (1988), 40 Ohio St. 3d 21, 26, 531 N.E. 2d 1297, 1302, citing *Dayton Classroom Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 70 O.O. 2d 223, 323 N.E. 2d 714, paragraph one of the syllabus; accord *Struthers City Schools Bd. of Edn.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, 6 OBR 368, 453 N.E. 2d 613.