**State, ex rel. Sporar, v.
Mayfield Heights**
*[Cite as 6 AOA 258]*

*Case No. 57179
Cuyahoga County, (8th)
Decided August 10, 1990*

Joseph E. Feighan and Dennis F. Butler, 900 Terminal Tower, Cleveland, Ohio 44113, for Relator.

Vincent A. Feudo, Director of Law, City of Mayfield Heights, 55 Public Square, Cleveland, Ohio 44113, for Respondents.

PATTON, C.J.

Relator is a Class A Firefighter employed by the City of Mayfield Heights. In addition to the city, respondents are the mayor and the members of the city's civil service commission.

In February, 1986, relator took the examination for lieutenant along with approximately eight other firefighters. Relator placed second on the list of those eligible for promotion. After the person who had been first on the list was promoted, relator was placed first on the eligible list which remained in effect until April, 1988.

A vacancy in the rank of lieutenant occurred on May 7, 1987. On June 12, 1987, respondent mayor appointed James Mendolera, a Class A Firefighter who at the time was second on the list after relator, to fill that vacancy.

Relator requests that this court issue a writ of mandamus compelling respondents to certify and appoint relator as a lieutenant on the Mayfield Heights Fire Department.

Relator contends that he is entitled to be promoted because he was first on the eligible list at the time the May 7, 1987 vacancy occurred and R.C. 124.46 and 124.48[1] require appointment of the person who is first on the eligible list.

In support of his position, relator relies primarily on *State, ex rel. Bardo, v. Lyndhurst* (1988), 37 Ohio St. 3d 106. In *Bardo*, a police officer, who contended that he had been improperly denied a promotion, had requested that this court issue a writ of mandamus. After this court denied relief in mandamus, the Supreme Court reversed and allowed the writ.

The Supreme Court held that charter language may supersede that of the Revised Code but "only where the conflict appears by the express terms of the charter ***." *Bardo, supra,* at 109. As a consequence, the Supreme Court determined that various provisions of the Lyndhurst charter which deal with promotions do not conflict with R.C. 124.44,[2] which provides that the first police officer on an eligible list is also to receive the appointment to fill a vacancy.

The same charter language which was at issue in *Bardo* appears in the Mayfield Heights charter. Article III, Section 3(d) of the Mayfield Heights charter defines the authority of the mayor and provides, in part:

"Subject to the other provisions of this Charter and of the laws of Ohio, the Mayor shall have the power to appoint, promote, transfer, reduce or remove any officer or employee of the City ***." Article V, Section 7 of the Mayfield Heights charter describes the duties of the civil service commission and provides, in part:

"The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for appointment and promotion in the service of the City as required by the Constitution of Ohio ***." The Supreme Court in *Bardo* held that this language was not in conflict with the provisions of the Revised Code requiring promotion of the first person on the eligible list. *Bardo* requires, therefore, that we conclude that the Mayfield Heights charter does not conflict with R.C. 124.46 and 124.48.

The fundamental criteria for issuing a writ of mandamus are well-established:

"In order to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State, ex rel. National City Bank, v. Bd. of Education* (1977), 52 Ohio St. 2d 81." *State, ex rel. Harris, v. Rhodes* (1978), 54 Ohio St. 2d 41, 42. Of course, all three of these requirements must be met in order for mandamus to lie.

In *Bardo, supra,* the resolution of the issue of whether a conflict existed was sufficient for the Supreme Court to conclude that both the requisite clear legal duty and clear legal right existed. In this action, however, respondents contend that relator does not have a clear legal right to relief because the subject of promotions is addressed in the collective bargaining agreement between respondent city and the sole and exclusive representative of the employees (who are employed as a firefighter, lieutenant or captain), Local 1500 of the International Association of Firefighters ("Local 1500").

Article 9 (entitled "Promotions") of the collective bargaining agreement, which was in effect from January 1, 1985 through December 31, 1987, provides:

"All promotions in the Fire Department shall be made by competitive examination which shall be impartial and shall be handled in the manner provided for by the Civil Service Commission through its [sic] rules and regulations as provided in the City Charter." As amended in 1982, Rule VI, Section 1 and Rule IV, Sections I and J of the civil service commission rules require the commission to certify the top three names on the eligible list and permit the mayor to appoint one individual who is among the three who are certified.[3]

Respondents argue that, because the collective bargaining agreement between respondent city and Local 1500 specifically deals with the subject of promotions, relator does not have a clear legal right to relief in mandamus. R.C. 4117.10(A) provides, in part:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. [Except for certain circum-

stances which are not present in this action,] *** Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in Chapter 4117. of the Revised Code or as otherwise specified by the general assembly." In respondents' view, therefore, the provision in the collective bargaining agreement which deals with promotions is controlling. As a consequence, respondents argue, the rules of the civil service commission requiring promotion of one of the top three candidates on the eligible list govern the promotion procedure.

Relator, however, argues that the requirement stated in *Bardo, supra,* that there must be an express conflict between the charter and the Revised Code provisions governing promotions is controlling. Relator contends that, although the collective bargaining agreement calls for promotions as provided in the charter, the charter does not contain any provisions regarding promotions. As a consequence, in relator's view, the "agreement makes no specification about [the] matter" of promotions and, under R.C. 4117.10(A), "the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." That is, R.C. 124.46 and 124.48 requiring promotion of the first person on the eligible list governs.

We disagree with relator that Bardo, supra, precludes consideration of the collective bargaining agreement in this case. "R.C. Chapter 4117 reshapes the law governing the relationship between public employers and employees. *Local 4501 v. Ohio State Univ.* (1986), 24 Ohio St. 3d 191, 195, 24 OBR 420, 423, 494 N.E. 2d 1082, 1086." *State, ex rel. Rollins, v. Cleveland Hts.- University Hts. Bd. of Edn.* (1988), 40 Ohio St. 3d 123, 124.

Furthermore, the Supreme Court in Bardo considered whether the collective bargaining agreement provided an adequate remedy such as would bar relief in mandamus. "Because matters dealing with promotions are not covered by the agreement, its grievance procedure does not provide a remedy that would bar relator's complaint in mandamus." *Bardo, supra,* at 113. Certainly, the Supreme Court's opinion in *Bardo* invites consideration of the terms of collective bargaining agreements.

*Bardo* also presaged the analysis which the Supreme Court would employ in later cases in which the issue of whether a provision of a collective bargaining agreement would prevail over a provision in the Revised Code. In *Rollins, supra,* the Supreme Court reversed the allowance of a writ of mandamus by this court and held that the requirement of a collective bargaining agreement that "eligibility for tenure is conditioned upon a recommendation of tenure by the teacher's principal," (*Rollins, supra,* at 124) is controlling. This holding was reached in spite of the fact that R.C. 3319.11 provides for tenure after teaching three years in the previous five years in the district. The Supreme Court found that the subject of tenure was not one of those set forth in R.C. 4117.10(A) as being outside of the scope of collective bargaining agreements and determined that the absence of the principal's recommendation was dispositive.

Similarly, in *State, ex rel. Clark, v. Cleveland Regional Transit Auth.* (1990), 48 Ohio St. 3d 19, the Supreme Court affirmed this court's issuance of a writ of mandamus because the collective bargaining agreement between the parties was silent as to the issue of prior service vacation credit. R.C. 9.44 sets forth the rights of public employees to prior service vacation credit for having served with the state or one of its subdivisions in previous employment.

*Bardo, Rollins* and *Clark* all demonstrate that the provisions of a collective bargaining agreement must be considered in an action such as this one brought by relator. This consideration should focus first on determining whether the agreement clearly addresses the controverted issue--in this action, the procedure for promotions. If the agreement does address the issue; it is necessary to determine whether R.C. 4117.10(A) requires that any contrary provision of the Revised Code or local laws defer to the collective bargaining agreement. If the issue is not one excepted from the preeminence given to collective bargaining agreements in R.C. 4117.10(A), the agreement is controlling despite any legislation to the contrary.

In this action, the collective bargaining agreement between respondent city and Local 1500 unequivocally addresses the subject of promotions in Article 9, which provides:

"All promotions in the Fire Department shall be made by competitive examination which shall be impartial and shall be handled in the manner provided for by the Civil Service Commission through its [sic] rules and regulations as provided in the City Charter." As was mentioned above, relator asserts that the language "as provided in the City Charter" requires a specific

provision in the charter dealing with promotions. Because there is no such provision, relator argues, the agreement is not controlling and respondents have a clear legal duty to comply with the provisions of the Revised Code requiring the promotion of the person who is first on the eligible list.

Relator's reading of Article 9 is, however, strained. That is, Article 9 requires that promotions "be handled in the manner provided for by the Civil Service Commission through its [sic] rules and regulations as provided in the City Charter." Article V, Section 7 of the charter provides, in part:

"The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for *** promotion ***." The civil service commission is, therefore, authorized to set forth rules for promotion under the charter. The rules which the commission promulgated in 1982 require the commission to certify the names of the top three candidates on the eligible list to the mayor. See footnote 3 below. As a consequence, the terms of the agreement supersede those of R.C. 124.46 and 124.48 which would automatically require the appointment of the first person on the eligible list.

Relief in mandamus would, therefore, be inappropriate. Accordingly, we hold that relator does not have a clear legal right to be promoted to lieutenant nor do respondents have a clear legal duty to certify him for or appoint him to that position.

Similarly, we cannot find that relator lacked an adequate remedy in the ordinary course of the law. Article 6 of the collective bargaining agreement provides a grievance procedure. If the grievance is not satisfactorily resolved during the several steps of the grievance procedure, Local 1500 may submit the grievance to binding arbitration. The record does not reflect that relator filed or prosecuted a grievance. In *Rollins, supra,* the Supreme Court stated:

"Rollins could have initiated and processed a grievance without union support. Therefore, Rollins had an adequate remedy at law for resolving that issue. See *State, ex rel. Bardo, v. Lyndhurst* (1988), 37 Ohio St. 3d 106, 112-113, 524 N.E. 2d 447, 453-454." *Bardo, supra,* at 128. Relator in this case could have initiated and processed the first three steps of the grievance procedure before requiring union support. The parties' stipulations do not reflect that relator filed a grievance. In light of relator's failure to initiate and process a grievance, we cannot find

that the grievance procedure did not provide relator with an adequate remedy at law.

Accordingly, relator's request for relief in mandamus is denied. Relator to pay costs.

*Writ denied.*

KRUPANSKY, J.J., and J.F. CORRIGAN, J., concur.

---

[1] R.C. 124.46 ("Eligible lists for firemen") provides, in part:

"The names of the examinees shall be placed on the eligible list in accordance with their grades; the one receiving the highest grade shall be placed first on the list. ***. The person having the highest position on the list shall be appointed in the case of a vacancy."

R.C. 124.48 ("Filling of vacancies") provides, in part:

"*** [T]he civil service commission shall certify to the appointing authority the name of the person receiving the highest grade [on a competitive promotional examination). Upon such certification, the appointing authority shall appoint the person so certified ***."

[2] R.C. 124.44 ("Promotions in police department") provides, in part:

"After (a competitive promotional) examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified ***."

[3] RULE VI REQUISITION, CERTIFICATION AND APPOINTMENT

*"Section 1:* Upon receipt of notice from the Mayor that a vacancy exists in the classified service, the Commission shall certify to the Mayor the three names graded highest on the eligible list, both for original and promotional appointments. The mayor shall there upon [sic] appoint one of the three so certified to fill the position. Should there be more than one position to be filled, additional names shall be certified so that at least twice more eligibles than positions to be filled shall be certified."

RULE IV EXAMINATIONS

*"Subsection I:* After such promotional examination has been completed, the Commission shall certify to the appointing authority the names of the three candidates standing highest on the eligible list. The Mayor shall appoint one of the three persons certified to him, to such position within thirty days of such certification.

*Subsection J:* If there is an eligible list, the Commission shall certify to the appointing authority the names of the three candidates standing highest on the eligible list and the Mayor shall appoint one of the three persons certified to him, to such position within thirty days of such certification.