BORMAN, APPELLEE, *v.* GORHAM-FAYETTE BOARD
OF EDUCATION, APPELLANT.

[Cite as Borman *v.* Gorham-Fayette Bd. of Edn. (1986),
28 Ohio St. 3d 151.]

(No. 86-186—Decided December 26, 1986.)

*Gallon, Kalniz & Iorio Co., L.P.A., Ted Iorio* and *Tobie Braverman,* for appellee.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., John C. Burkholder* and *Kimball H. Carey,* for appellant.

*Per Curiam.* In *Struthers City Schools Bd. of Edn.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, syllabus, this court held that "[c]ontractually created procedural requirements relating to the nonrenewal of teachers' limited employment contracts * * * are enforceable so long as the procedures do not directly conflict with R.C. 3319.11," which provides the statutory framework for the renewal and nonrenewal of such contracts. In the instant case, appellee Borman points to the formal evaluation provision that was inserted into her 1981-1982 teaching contract and claims that this provision created procedural requirements relating to the nonrenewal of her contract. Borman further claims that the appellant board failed to comply with such requirements and thus had no authority to not renew her limited teaching contract at the end of the 1981-1982 school year.

In addressing Borman's arguments, the trial court noted that "* * *

---

[2] This evaluation procedure is referred to as the "Gorham-Fayette Evaluation Procedure" adopted by the Gorham-Fayette Teachers Association in 1975. By its own terms, this procedure is of a voluntary nature and is not a required form of evaluation.

[t]he contract itself is silent as to whether * * * [Borman's] evaluation was to be linked specifically to the nonrenewal process," but the court did state that the evaluation procedure was inserted into the contract "* * * in order to adequately assess * * * [Borman's] performance ability prior to making a decision regarding her possible rehiring for the 1982-1983 school year * * *." In light of this apparent link between Borman's evaluation and the nonrenewal of her contract, the trial court proceeded to interpret the evaluation clause and, based upon the evidence before it, concluded that the board was obligated to conduct an evaluation of Borman's performance using *any* appropriate evaluation system.

The court reached this conclusion by application of the standard dictionary definition of the term *"e.g."* Reasoning that the term *"e.g."* means "for example," the court held that by stating that " 'Phoebe Borman will be under a formal evaluation system, e.g. Evluation [*sic*] Procedure adopted June 1975 [*i.e.,* the Gorham-Fayette Evaluation Procedure] or an evaluation procedure agreed between the evaluator and teacher,' " the board could have "contractually satisfied [its obligation] in one of three ways:

"(1) The defendant's agent (*i.e.,* the principal) could have made a formal evaluation of the plaintiff by using the Gorham-Fayette Evaluation Procedure.

"(2) The defendant's agent could have made a formal evaluation of the plaintiff by using some other formal procedure.

"(3) The defendant's agent and the plaintiff could have agreed to use some procedure, acceptable to both parties, which may or may not have been formal in scope."

The court then held that the evaluations conducted by Armbrust during the 1981-1982 school year were sufficient to satisfy the requirement that Borman be evaluated under some formal procedure.

Appellee contends that the trial court's interpretation of the *"e.g."* phrase was in error, because the examples given therein should have been utilized as a paradigm against which compliance should have been strictly measured. Borman's argument rests, first, upon a reading of the *"e.g."* phrase which would include *both* the Gorham-Fayette Evaluation Procedure *and* "an evaluation procedure agreed between the evaluator and teacher" as the examples to be followed. The argument then rests upon the assertion that the evaluation procedure utilized by Armbrust was in no way comparable to the Gorham-Fayette procedure and was not agreed upon between Borman and Armbrust. The trial court's reading of the *"e.g."* phrase, however, included the Gorham-Fayette procedure as the *only* example given—effectively reading the evaluation clause as requiring either a "formal evaluation system * * * or an evaluation procedure agreed between the evaluator and teacher." The court thus treated the Gorham-Fayette procedure as just one example of a "formal evaluation system."

There is no question that the evaluation clause in question is open to a variety of interpretations. We cannot say, however, that the trial court's interpretation was unreasonable. Borman presented no evidence of prior negotiations over the terms of the evaluation clause, nor is there any other evidence in the record to suggest that the board sought to limit its evaluation of Borman *only* to the Gorham-Fayette procedure or another procedure "agreed between the evaluator and teacher." Therefore, giving the trial court's interpretation of the contract language "a presumption of correctness," we find that the interpretation was not against the "manifest weight of the evidence." *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80.

We also will not disturb the trial court's determination that Armbrust's evaluation "qualifies as a formal evaluation procedure under the contract provision in question." With regard to this determination, the trial court stated: "The evidence shows that on at least three occasions during the 1981-1982 school year, the principal entered the plaintiff's classroom and wrote an evaluation of her performance as a teacher, using a form he had developed personally over a period of years during his career as an educator in a supervisory position. * * * The forms themselves show that observations were made and recorded, and suggestions were offered as to how to improve the teacher's performance. The plaintiff's signatures on the forms indicate that she read the reports. On several occasions, the plaintiff wrote her own comments in the spaces designated for that purpose. A dialogue existed between the parties. The forms indicate that the plaintiff was observed, was evaluated, and had the opportunity to respond to the evaluation. Therefore, the evaluation procedure used by Principal Armbrust, while perhaps not as detailed as the Gorham-Fayette Evaluation Procedure, nevertheless qualifies under the terms of the contract as a formal evaluation procedure." These findings, which are supported by the record, require that the trial court's judgment—that the board did not breach its contract with Borman—be reinstated.

Our holding on the foregoing issue necessarily resolves the second issue presented herein—whether Borman was denied due process of law by the board. In her complaint, Borman alleged that the nonrenewal of her contract, without compliance with "the terms of the teacher's limited contract * * * with regard to a formal evaluation system," resulted in a denial of her right to due process. Although this court previously has held that a contractual provision, rule, or " 'mutually explicit understandings' " may support a nontenured teacher's expectation of continued employment and thereby give rise to a due process claim upon the summary nonrenewal of the teacher's contract, *DePas* v. *Board of Edn.* (1977), 52 Ohio St. 2d 193, 198 [6 O.O.3d 421] (quoting *Perry* v. *Sindermann* [1972], 408 U.S. 593, 601), the finding by the trial court herein that the board properly complied with the evaluation clause of Borman's contract disposes of Borman's due process claim.

While it is apparent that the trial court erred in dismissing Borman's due process claim without first making a determination with regard to the board's compliance with the evaluation clause, this error subsequently was rendered harmless by the court's factual determination that the board was not in breach of that clause. Borman's due process claim was based *solely* upon the allegation that the board had failed to evaluate her in accordance with her contract prior to her nonrenewal. The trial court's finding that Borman had, in fact, received the required evaluation thus disposes of the only basis offered for Borman's due process claim.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the court of common pleas is reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

CELEBREZZE, C.J., C. BROWN and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. In *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, this court held:

"A board of education is vested with discretionary authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." *Dayton Teachers Assn., supra,* at paragraph one of the syllabus.

This holding of the court was, more recently, approved and followed in *Struthers City Schools Bd. of Ed.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, syllabus, where it was held:

"Contractually created procedural requirements relating to the nonrenewal of teachers' limited employment contracts, contained in collective bargaining agreements and arrived at through open negotiation, are enforceable so long as the procedures do not directly conflict with R.C. 3319.11."

As school boards tested the resolve of this court to apply this law, this court was forced to emphasize its position:

"* * * Public agencies should be aware that their agreements are as sacrosanct as those made between strictly private parties. Public agencies, like those in the private sector, are bound by the agreements made by those who negotiate on their behalf. Such agreements are not subject to the subsequent whims and caprices of the public agency or its members. This court should not, and indeed will not, tolerate eleventh hour specious challenges to agreements made by public agencies after they have negotiated and have given their word." *Warren Edn. Assn* v. *Warren City Bd. of Edn.* (1985), 18 Ohio St. 3d 170, 175.

So that the message of these cases would not be misinterpreted, this court, most recently, reemphasized:

"* * * [N]egotiated collective bargaining agreements are just as binding upon public employers as they are upon private employers. Courts should not allow public employers to disregard the terms of their collective bargaining agreements whenever they find it convenient to do so. On the contrary, the courts will require public employers to honor their contractual obligations to their employees just as the courts require employees to honor their contractual obligations to their employers." (Citations omitted.) *Mahoning Cty. Bd. of Mental Retardation* v. *Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St. 3d 80, 84.

In spite of these recent admonitions, I find that the most flagrant transgressions of this mandate continue.

In 1981, Phoebe Borman entered into a one-year written contract with the Gorham-Fayette Board of Education to teach in that district. In contemplation of improving her teaching skills so as to better serve the district's needs in the following years, the school board inserted an express provision in the contract that provided:

"Phoebe Borman will be under a formal evaluation system, e.g. Evluation [*sic*] Procedure adopted June 1975 or an evaluation procedure agreed between the evaluator and teacher.

"By Board Resolution this evaluation process is to be a strong evaluation."

Upon consideration, inasmuch as a provision providing for the evaluation of a teacher does not abrogate the statutory authority of a school board to nonrenew a limited teaching contract under R.C. 3319.11, the provision is an acceptable clause in an employment contract. Second, notwithstanding the grammatical signal, *"e.g.,"* in this provision, this contract envisioned more than a perfunctory evaluation of Borman's abilities. The provision demonstrates the explicit intent that the evaluation be conducted under either of two permissible conditions. One, an evaluation could be conducted pursuant to the specific evaluation procedure approved and adopted in 1975 by both the Gorham-Fayette school board and by the Gorham-Fayette Teachers' Association. This procedure dictated that in September of the year in which an evaluation is to take place, the evaluator for the school board, *i.e.,* the principal, would meet with the teacher to be evaluated. At this meeting, the parties would establish specific long-term and short-term goals necessary for the teacher to improve her skills. Also, the parties would mutually establish a minimum number of classroom observation visits to be conducted along with a corresponding minimum number of minutes to each visit. In conjunction with these visits, regularly scheduled conferences between the principal and the teacher would be conducted throughout the year at mutually agreed-upon times to discuss progress toward the teacher's goals. Following each conference, the principal was to provide the teacher with a written summary

of the conference and to allow the teacher an opportunity to comment upon the summary. Two, as an alternative to this more rigid format, the contract provided that any evaluation procedure could be employed if the procedure to be used were mutually agreed upon by the principal and the teacher.

In this case, however, by the evaluating principal's own admission, neither condition was met. Instead, and without consulting Borman, the principal used an evaluation process he had developed himself while serving in a different school district. The procedure involved three classroom observation visits: two in September 1981 and one in March 1982. This constituted less than two total hours of classroom observation. Although the principal presented Borman with his written observations and then asked her to sign the form, there was no meaningful discussion of his observations. The principal indicated each review process was completed in "a few minutes."

Considering these facts, it is clear that the evaluation procedure afforded Borman did not meet, in any material fashion, as a matter of law, the strictures of the mutually agreed-upon terms of the contract. It is quite obvious that the Gorham-Fayette Board of Education did not consider itself bound by its own agreements. Had the postures of the parties been reversed, however, it is certain that the board would have demanded strict compliance with the terms of the contract. Such conduct should not be countenanced.

Accordingly, I would affirm the decision of the court of appeals in its finding that a breach of contract occurred. In accordance with this finding, I would enter judgment for appellee Borman on her contract claim and grant her relief, including damages, as provided by law.

CELEBREZZE, C.J., and C. BROWN, J., concur in the foregoing dissenting opinion.