**Smith**
**v.**
**Upper Sandusky Bd. of Ed.**
*[Cite as 2 AOA 146]*

*Case No. 16-88-24*
*Wyandot County, (3rd)*
*Decided March 6, 1990*
*R.C. 3319.11*

*Messrs. Gallon, Kalnig & Iorio, Attorneys At Law, Mr. Ted Iorio, Ms. Brenda G. Meyer, 3161 North Republic Blvd., P.O. Box 7417, Toledo, Ohio 43615, For Appellants.*

*Messrs. Squire, Sanders & Dempsey, Attorneys At Law, Mr. R. Dean Jollay, Jr., Mr. Timothy E. Cowans, 115 East Broad Street, Columbus, Ohio 43215, For Appellees.*

EVANS, J.

This is an appeal from a judgment of the Court of Common Pleas of Wyandot County ordering the Upper Sandusky Exempted Village School District Board of Education (Board) to grant a teaching contract to Jeanette J. Smith (Appellant). Even though appellant prevailed in the trial court and gained re-employment as a teacher, she appeals the decision of the trial court because it failed to order her re-employment under a continuing contract.

Appellant had been employed as a teacher by the Board for approximately fourteen years. She had been employed through a series of limited contracts, but at the conclusion of the 1986-87 school year appellant was eligible for a continuing contract for the 1987-1988 school year.

On April 2, 1987, the superintendent of schools notified appellant in writing that he did not intend to recommend to the Board that she be re-employed for the next school year. The Board received this recommendation from the superintendent and pursuant thereto voted not to re-employ appellant.

Appellant was notified of this action by letter dated April 8, 1987. It is undisputed that the Board fully complied with the provisions of R.C. 3319.11 implementing their decision not to re-employ appellant.

Appellant is represented by Upper Sandusky Education Association (USEA) as exclusive bargaining representative for the certificated personnel of the Upper Sandusky School District. The Board and the USEA were parties to an agreement designated "Master Contract" which dealt with matters of salary, fringe benefits, hours and terms of employment.

We pause here to point out that the record contains a copy of the Master Contract which applies to the period beginning March 1, 1987 through June 30, 1988. The period of time involved in this appeal, however, starts in August or September, 1986 with the beginning of the school year, and ends in May, 1987 with the end of the school year. Thus, the contract in the record does not apply to most of the period of time which we have under review. During oral argument counsel for the appellant assured us that this made no difference because the only question on appeal was the order of the trial court which gave the Board the right to offer either a limited contract or a continuing contract to appellant for the school year beginning in September, 1987. On the other hand counsel for the appellee Board assured us that a Master Contract was in force prior to the contract in the record, and that the terms thereof were substantially the same as the Master Contract in the record. We believe that this deficiency in the record presents certain problems in the analysis of this case. Nevertheless, we will address the assignment of error on the merits to the extent that the record will permit us to do so.

Article V, Section A, of the Master Contract in the record is worded as follows:

### ARTICLE V - EMPLOYMENT PRACTICE/WORKING CONDITIONS
#### A. STAFF EVALUATION

The primary element in the staff evaluation procedure is the administrative staff consisting of the principals, assistant principals, the elementary supervisor, and the superintendent. The administrative staff is involved in evaluation based on visitation and day-to-day interaction with employees. Minimally, the administrative staff shall schedule evaluations of new employees, employees whose limited contracts are up for renewal, and employees eligible for continuing contracts between the fourth and sixth week of the school year and in January and March. All other employees shall be evaluated at least once during the school year. During these evaluations the administrative staff member will complete the Teacher Evaluation Form. Within three (3) school days of an evaluation the employee and evaluator shall arrange a time to discuss job performance and to review the administrator's evaluation. The employee shall be given a copy of the evaluation form at this time.

All evaluations must be signed by the employee and the evaluator to indicate that a

conference was held. The employee's signature does not necessarily indicate agreement. If an employee disagrees with an evaluation report, he/she may provide a written statement indicating areas of disagreement. Such statement will be attached to the evaluation report as part of the permanent record. When a member of the administrative staff has reason to believe that any employee in his/her building is not performing with acceptable skill and competency, such will be so noted on the evaluation instrument along with positive suggestions and specific instructions for improvement. Further evaluation records shall reflect the extent to which the suggestions are carried out by the employee and the progress being made in correcting cited deficiencies. In the event that an employee feels that his/her evaluations was conducted unfairly, he/she may appeal to the Superintendent to review the process and/or to conduct a separate evaluation. It is undisputed that appellant was not evaluated as required by this Article during the school year beginning in September, 1986.

On September 24, 1987 appellant filed her action against the Board on the theory of breach of contract and alleged the failure to comply with the evaluation procedure set forth above. The trial court found that the evaluation procedure required by the Master Contract was not followed and entered the following order in the case.

"It is THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiff Smith be granted an appropriate teaching contract commensurate with her teaching certificate and qualifications, and that the she be *[sic]* paid all back wages. Appropriate teaching contract means the Defendant Board of Education, in accordance with Ohio Revised Code Section 3319.11, may issue Plaintiff either of the two contracts it could have granted Plaintiff in April, 1987: (a) a limited contract for one or two years with notice of the Superintendent's intention to make such recommendation with reasons directed at the professional improvement of the teacher; or (b) a continuing contract."

It is from this order that appellant appeals and asserts the following assignment of error:
THE TRIAL COURT ERRED IN GRANTING THE BOARD OF EDUCATION THE OPPORTUNITY TO DECIDE WHETHER TO GIVE APPELLANT SMITH A CONTINUING CONTRACT OR A LIMITED CONTRACT WITH REASONS DIRECTED AT PROFESSIONAL IMPROVEMENT, RATHER THAN ORDERING THAT PLAINTIFF SMITH BE GRANTED A CONTINUING CONTRACT".

The appellant's argument is this. The evaluations required under the Master Contract were additional requirements which the Board was required to fulfill before the Board could decide not to re-employ appellant. Even though the Board correctly complied with the requirements of R.C. 3319.11 the notice given pursuant to that statute was ineffective because of the failure to evaluate. It therefore follows that appellant is entitled to a continuing teaching contract because of this provision in R.C. 3319.11:

" * * * . If *the board of education does not give such teacher written notice* of its action on the superintendent's recommendation of a limited contract for not to exceed two years *before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract at* the same salary plus any increment provided by the salary schedule. * * * ."

Thus, the appellant seeks to add the Master Contract provision on evaluations to the statutory requirements contained in R.C. 3319.11 and to require that the Board fully comply with all such requirements before a proper notice not to re-employ can be given.

Appellant cites *State, ex rel. Frances* v. *Windham Exempted Village School District Board of Education* (1986), 25 Ohio St. 3d 351 as support for her argument that a faulty notice of a decision not to re-employ does not satisfy the requirements of R.C. 3319.11 with the result that the teacher in question is entitled to a continuing contract. In *State, ex rel. Frances, supra*, the teacher did not receive notice of the decision not to renew his contract until May 2, 1984, in violation of the express provisions of R.C. 3319.11. The teacher was eligible for a continuing contract at that time. The Supreme Court held that under the express terms of R.C. 3319.11 the teacher was entitled to a continuing contract upon the failure of the Board of properly achieve nonrenewal. See also *State, ex rel. Lee* v. *Bellefontaine Bd. of Edn.* (1985), 17 Ohio St. 3d 124.

We note, however, that these cases deal with situations involving a failure to comply with the requirements contained in R.C. 3319.11. Appellant has cited no case which adds contractual requirements to the statutory requirements and declares the notice of not to re-employ faculty for a failure to comply with both.

In its brief the Board argues that it fully complied with the requirements of R.C. 3319.11 in notifying appellant of their decision not to

re-employ. At that point, the relationship between the Board and the appellant was over, and the Board was under no further obligation to appellant. Re-employment by the Board at a later date would not entitle appellant to a continuing contract under the terms of R.C. 3319.11.

Appellee cites *State, ex rel. Hura* v. *Bd. of Edn.* (1977), 51 Ohio St. 2d 19, in support of its position. In this case a teacher who was entitled to a continuing contract for the ensuing year, received proper notice of the decision not to re-employ as required by R.C. 3319.11. A change of circumstances caused the Board to change its plans and the teacher was offered a limited teaching contract. The teacher sued claiming he was entitled to a continuing contract. The Supreme Court held in paragraph 3 of the syllabus:

"3.Where the board of education, because of a change of circumstances, rescinds a prior resolution, passed before April 30th, denying a teacher, eligible for continuing service status, re-employment for the following year, it may re-employ such teacher after April 30th under either a limited contract for less than two years or a continuing contract."

The Court further explained at page 24:

"Furthermore, it cannot be contended, in the present situation, that the board could only grant Hura a continuing contract once the April 30th deadline had passed, based on the assumption that it would be impossible for the board to comply with the provisions of R.C. 3319.11, requiring that certain steps be taken prior to April 30th before granting a limited contract. Such an approach completely overlooks the fact that the board, prior to April 30th, took effective action when it resolved not to re-employ Hura. That action was not a futile, meaningless act, since the board thereafter was under no further obligation to the teacher. Moreover, to contend that upon re-employment, the teacher must be given a continuing contract, could result in substantially impairing the board's ability to hire experienced and qualified teachers, a result clearly not intended by the General Assembly." (Citations omitted).

In our opinion these cases do not address the position claimed by the appellant. None of the cases involve contractual provisions arising out of an agreement to which the Board was a party. The cases do, however, support the position of the appellee Board in that they treat the decision not to re-employ under 3319.11 as a separate transaction which was final and complete by April 30. A later decision to re-employ, for whatever reason, was considered a new and unrelated transaction between the parties.

We believe that the authorities cited by the parties are not controlling here. The real question in this case is whether or not the evaluation provision in the collective bargaining agreement can be added to the requirements of R.C. 3319.11 when considering whether the appellant received an effective notice of the decision of the Board not to re-employ.

In the trial court the appellant alleged breach of the collective bargaining contract and asked to be reinstated to her teaching position with a continuing contract. The Board countered with the argument that there must be a link between the evaluation procedure and the process resulting in a decision not to re-employ the teacher before the contractual provisions can be added to the requirements of R.C. 3319.11.

The trial court found the necessary link in the wording of Section 7.06(B)(3) of the Board of Education Policy which provides:

"3.Teachers who have met all the legal requirements to become eligible for a continuing contract, but who have in the opinion of the principal, supervisor and/or superintendent certain deficiencies, shall be notified of such weaknesses, in writing, by the superintendent on or before April 30. They may be placed on a limited contract for two (2) years."

The trial court reasoned that if the Board had a duty to notify teachers eligible for a continuing contract of their deficiencies, the Board could not fulfill that obligation without having performed the evaluations required by the collective bargaining agreement. Therefore, the evaluations were tied to the provisions of R.C. 3319.11 involving a decision not to re-employ.

We do not agree with this analysis. There are other considerations upon which a board of education might base their decision not to re-employ a certain teacher in addition to teaching deficiencies. The board could be faced with financial considerations, declining student populations or a lack of student demand for the class taught by the teacher in question. The record does not give us the reason for the decision not to re-employ appellant and we will not assume that the reason was teaching deficiencies.

Although the contract in the record is not the contract which required the Board to perform the evaluations in question, we find nothing in this collective bargaining agreement which indicates an intention on the part of the parties to include these evaluations with the requirements of R.C.

3319.11 which must be observed before an effective decision not to re-employ can be made. If this were the intent of the parties the contract should clearly set that out in unmistakable language. In the absence of a clear and definite link between the requirements of the collective bargaining agreement, we view the proceedings pursuant to R.C. 3319.11 leading to a decision not to re-employ as entirely separate from the contractual obligations between the parties. Thus it was not necessary for the Board to comply with any contractual provisions before an effective decision not to re-employ could be made under the provisions of R.C. 3319.11.

The breach of contract must be considered as a separate cause of action against the Board which is entirely unrelated to the decision of the Board not to re-employ appellant. The collective bargaining contract in the record contains no specific remedy which applies in the event of a breach of contract. Under these circumstances the trial court is free to provide an appropriate remedy for the injured party. See *Braswell* v. *Lucas Metro. Housing Auth.* (1985), 26 Ohio App. 3d 51. The trial court has fashioned appropriate relief in this case. For the reasons stated above we find no basis for awarding only a continuing teaching contract as relief for the breach of collective bargaining agreement.

The assignment of error is overruled.

Having found no error prejudicial to the plaintiff-appellant herein, in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BRYANT and MILLER, JJ., Concur.