This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, Phillip Saadey (hereinafter "Saadey"), appeals the Mahoning County Court of Common Pleas' decision affirming the State Personnel Board of Review (hereinafter "SPBR") decision upholding the termination of Saadey from his position with the Mahoning County Engineer's Office (hereinafter "MCEO"). The issue before us is whether the court abused its discretion when it found the SPBR's decision was supported by reliable, probative, and substantial evidence and was not contrary to law. Because we conclude the court did not abuse its discretion, the decision is affirmed.
As a preliminary matter, we note a review of the case file discloses that neither Saadey's brief nor the undated certificate of service are signed. Pursuant to App.R. 13(D), documents filed with the appellate court shall not be considered until proof of service is endorsed on the documents or separately filed. It does not appear, however, that the MCEO has been prejudiced as this court granted it leave to file a brief after it stated it was never served a copy of Saadey's brief. The unsigned and otherwise blank certificate of service form attached to Saadey's brief indicated the veracity of the MCEO's claim.
Turning to the underlying facts of the case, which are somewhat extensive, Saadey began his employment with the MCEO's office in the mid 1980's. In 1993, the MCEO enacted a substance abuse policy (hereinafter "SAP"). Section 5.4 of the SAP provides all union and non-union safety sensitive positions listed in paragraph 13.0 of the SAP shall be tested for prohibited substances. Saadey was classified as a non-union Traffic Electrical Supervisor, a safety sensitive position pursuant to Section 14.0 of the SAP, thereby making Saadey subject to testing. Though Saadey did not always do things considered safety sensitive during the course of his employment, he retained that classification.
Saadey first tested positive for substance abuse on February 10, 1997. His second offense was June 1, 1998, when he refused to take a random substance abuse test. On October 20, 1998, he failed a third time, testing positive for cocaine after he backed his personal vehicle into a county owned vehicle and did not report the incident.
Section 12.0 of the SAP delineates the disciplinary action for an employee after testing positive:
"FIRST OFFENSE — Employee must enroll within ten days and complete a rehabilitation program and receive approval to return to work from a Substance Abuse Professional.
"SECOND OFFENSE — Will result in a ten day suspension and must enroll within ten days and complete a rehabilitation program and receive approval to return to work from a Substance Abuse Professional.
"THIRD OFFENSE — Indefinite suspension, must seek treatment within ten days or be subject to termination after 60 days. Must sign a last chance agreement before returning to work."
After having been found to have failed those three drug tests, Saadey signed a Last Chance Agreement (hereinafter "LCA") which, in pertinent part and stated:
"In consideration of The Mahoning County Engineer's willingness to continue to employ me, I Phil Saadey agree to the following conditions:
"* * *
"5. To cooperate in a test of my breath, blood or urine for evidence of alcohol/drug use on completion of rehabilitation.
"6. To cooperate in unannounced, random tests of my breath, blood or urine for evidence of alcohol/drug use during my employment with the County Engineer's office.
"7. Random Testing may be administered at any time, one positive test equals termination.
"I understand and agree that I may be terminated from my job without recourse if I violate or revoke any paragraphs of this agreement."
At about 8:30 a.m. on the morning of April 20, 1999, Saadey was informed he must submit to a random drug test pursuant to the LCA. According to Section 5.4 of the SAP, Saadey was obligated to take the test within four hours of being notified or be subject to termination. That provision provides, in relevant part:
"Any union safety-sensitive or non-union safety employee who refuses to comply with a request for testing, who provides false information in connection with a test, or who attempts to falsify test results through tampering, contamination, adulteration, or substitution shall be removed from duty immediately, and a positive test result shall be conclusively presumed and subject to disciplinary action up to and including termination. Refusal can include an inability to provide a specimenwithin a four hour period or breath sample without a valid explanation, as well as a verbal declaration, obstructive behavior, or physical absence resulting in the ability [sic] to conduct the test." (Emphasis added).
Saadey had knowledge of the MCEO's drug/alcohol testing policies. On June 1, 1998, after refusing to take a drug test Saadey was notified he was in violation of section 5.4 of the SAP, and that "refusal to submit to a random substance abuse test conclusively presumes a positive test result." Saadey did not appeal his ten day suspension for this refusal. Saadey also attended a supervisor's meeting discussing the implementation of the drug policy. Saadey knew there was a time limit for how long he had to take the test, but claims he did not know what that limit was.
On the day in question, after being informed he was scheduled to take the drug test, Saadey said he wanted to speak with his immediate supervisor, Jim Bertrando. Instead, Saadey then proceeded to leave the building, went home, and fell asleep. Saadey testified he felt dizzy and had to use the restroom, and this is why he got in his vehicle and left the MCEO. However, he never sought any assistance when leaving the MCEO. Furthermore, Saadey admitted there were restrooms he could have used at the MCEO, but decided he would drive himself home, despite being "deathly ill", "nauseous", and feeling like he "was going to pass out." The facility where Saadey was to be tested is no more than five minutes by car from the MCEO. He did not tell anyone at the MCEO he was leaving due to illness until he was on his way home.
The MCEO wanted to drive Saadey to the testing facility in a government vehicle in accordance with its standard policy. This policy is to ensure the testee actually shows up at the testing facility and to protect the integrity of the test by prohibiting the testee from taking any type of substance which would skew the test results. Saadey claims he was not previously taken to the testing facility, but instead drove himself there "90% of the time." When asked if he was familiar with substances used to mask test results, Saadey admitted he was, but denied having ever used them. The MCEO did not specifically accuse Saadey of masking or altering the test results.
At 9:45 a.m., Chief Deputy Engineer Marilyn Kenner called Saadey's cell phone and left a message on his voice mail that Saadey would have to take the test by 12:30 p.m. or it would be considered a positive test result. Several other employees from the MCEO also tried to reach Saadey after he left the MCEO, leaving messages when they did not reach him. Saadey claims he did not receive the messages until later in the evening.
When Saadey did not arrive at testing facility to take the drug test by 12:30, he was placed on administrative leave. At approximately 1:10 p.m., Saadey arrived back at the MCEO and inquired if he could take the test. When told the allotted four hours to take the test had expired, Saadey went and took the test anyway. The results from the test were negative.
On April 22, 1999, Saadey attended a pre-disciplinary hearing with counsel before the Mahoning County Human Resources Director. The Human Resources Director recommended Saadey be terminated pursuant to Paragraph Seven of his Last Chance Agreement. Consequently, on May 11, 1999, the MCEO terminated Saadey's employment. Saadey filed an appeal with the SPBR on May 13, 1999, which was heard on July 26, 1999. The SPBR's Administrative Law Judge (hereinafter "ALJ") affirmed Saadey's dismissal on September 16, 1999. Saadey filed objections to that decision with the SPBR on September 27, 1999. The SPBR affirmed the ALJ's decision on November 10, 1999.
On November 23, 1999, Saadey appealed the SPBR's decision to
the Mahoning County Court of Common Pleas. In its April 3, 2000 judgment entry, the common pleas court found the SPBR's decision was based on reliable, probative and substantial evidence and affirmed that decision. It is from this decision Saadey timely appeals.
Saadey's sole assignment of error alleges:
 "The court erred in finding that Saadey violated the `Last Clear Chance Agreement' and/or the substance abuse policy and the trial court's decision is not based on reliable, probative and substantial evidence and contrary to Ohio law."
When a common pleas court reviews an administrative agency's order, as is the case here, the court must determine whether that order is supported by reliable, probative and substantial evidence and is in accordance with the law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110, 17 O.O.3d 65, 407 N.E.2d 1265. Although the SPBR's findings of fact are presumed to be correct, purely legal questions are reviewed de novo by both the common pleas court and this court. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339, 342, 587 N.E.2d 835. Our role is to determine only if the trial court abused its discretion. Ponsv. Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-0122,614 N.E.2d 748. Absent an abuse of discretion, we may not substitute our judgment for that of the common pleas court, rather, we must affirm the judgment. Id. An abuse of discretion constitutes more than an error of law or judgment; it implies the court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
Saadey presents four arguments wherein he contends the common pleas court abused its discretion. First, he claims the LCA did not incorporate the four hour time limit for testing found in Section 5.4 of the SAP and, therefore, he timely took the drug test in compliance with the LCA. Second, he argues the four hour period applies to an employee's physical inability to produce a sample for testing rather than prescribing the time within which the test must be completed. Third, he asserts he complied with the SAP as he explained that he did not take the test within the prescribed time due to his feeling ill. Finally, he claims the four hour time limit found in the SAP violates state law.
In support of his first argument, that the LCA fails to incorporate the SAP and, therefore, time constraints do not apply, Saadey cites to this court's decision in Fraternal Order of Police v. Mahoning CountySheriff's Dept. (Mar. 22, 1995), 7th Dist. No. 94-CA-81. In that case, the appellant was on duty in the Mahoning County Jail and was ordered by a superior officer to complete a bunk assignment sheet. The appellant refused, claiming he was suffering from a migraine headache and was going home sick. Subsequently, the superior completed an adverse behavior report charging the appellant with insubordination and failure to obey a direct order and, as a result of this report, the appellant was discharged.
At the time of the appellant's discharge in Fraternal Order of Police, the Sheriff's Department had a policy manual which contained a section on discipline. Two years after the Department unilaterally issued this policy manual, it and the union entered into a CBA which also contained a disciplinary section. The policy manual restricted discipline to discharge only while the CBA provided for suspension, reduction, or discharge. This court found that pursuant to R.C. 4117.10, the CBA controlled. It then found since the parties were well aware of the policy manual at the time they entered into the CBA, it was apparent the disciplinary provisions of the policy manual were modified by the CBA. In order for the CBA to incorporate the policy manual, the manual must have been in writing and signed by both parties. Id. at 4. Mere reference to the policy manual in the CBA was insufficient to incorporate the policy manual. Id.
Fraternal Order of Police does not apply to the present case. The LCA is not a separate and distinct agreement the parties entered into contrary to the terms of the CBA, such as the policy manual in FraternalOrder of Police. Rather, the LCA is an integral part of the disciplinary process contemplated by the CBA in the SAP. Pursuant to Section 12.0 of the SAP, once an employee has violated the SAP three times, that employee must sign a LCA before they are allowed to return to work. There is no provision in the SAP for discipline following a fourth offense. This is obviously because the last chance agreement is providing an employee with a last chance. In other words, the employee has one last chance to comply with the terms of the SAP. The terms of the SAP require an employee to submit to a drug test within a specified period of time after being notified of the test. Accordingly, the employee must report for the test in a timely fashion to comply with the LCA. As can be plainly seen, the LCA need not incorporate the SAP because it is already part of the SAP. Thus, Saadey's argument that the four hour time limit found in Section 5.4 of the SAP does not apply to the test required by the LCA is meritless.
In his second argument, Saadey claims the four hour time period applies to an employee's physical inability to produce a sample for testing rather than setting a time frame within which the employee must complete the test. Pursuant to Section 5.4 of the SAP, a refusal to take a test may "include an inability to provide a specimen within a four hour period * * *."
"The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties."Foster Wheeler Enviresponse, Inc. v. Franklin County ConventionFacilities Authority, 78 Ohio St.3d 353, 361, 1997-Ohio-0202,678 N.E.2d 519. When a court is construing the meaning of a contract, the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. If contractual terms are unambiguous, a court may not fashion a new contract or interpret contractual terms in a manner not expressed by the clear intent of the parties. Alexander v. BuckeyePipeline Co. (1978), 53 Ohio St.2d 241, 245-246, 7 O.O.3d 403,374 N.E.2d 146.
In this case, Section 5.4 of the SAP refers to an employee's inability to provide a specimen within four hours. Clearly, an employee's failure to arrive at the testing facility renders that employee unable to provide a specimen. Saadey's attempt to limit the term "inability" to "physical inability" is adding a term to the contract not contemplated by the parties. If the parties to the CBA had intended to limit the term "inability" in this way, then they surely would have indicated so in the CBA. Thus, Saadey's failure to report to the testing facility within the four hour period is a violation of the SAP and his second argument within this assignment of error is meritless.
In his third argument, Saadey claims he complied with the SAP because he provided an explanation for his failure to complete the drug test within the mandated four hour time period. In its decision, the ALJ found "no support in the record for the necessity of the actions of the appellant other than Mr. Saadey's testimony." Saadey argues this is an incorrect statement as the person who administered the test testified Saadey told him he was ill that day. Saadey also introduced evidence he was diagnosed with bronchitis and viral syndrome the day after the test.
What Saadey's argument ignores is this is not the finding of fact relied upon by the SPBR in reaching its decision. The ALJ found the evidence "insufficient to find that the specimen to be provided could not have been provided by Mr. Saadey within the four hours allotted." In this case, Saadey claimed he left work because he needed to use the bathroom because he felt "deathly ill", "nauseous", and like he "was going to pass out" and that he accidentally fell asleep. However, there were bathroom facilities on-site he could have used, he didn't tell anyone he was leaving until he was already headed home, he knew of different techniques people use to skew drug test results, and the testing facility was only five minutes from where he worked. In addition, when he called work he told them he would only be gone for about an hour, he fell asleep once he got home.
Questions of credibility and the weight to be accorded certain evidence are matters primarily to be left to the trier of fact. State v. Dehass
(1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 39 N.E.2d 212, paragraph one of the syllabus. Given the above facts, combined with the fact that Saadey had failed three previous drug tests in the previous twenty-six months, the factfinder could have reasonably concluded Saadey did not provide an adequate explanation for his failure to take the drug test in a timely fashion. Accordingly, it was not an abuse of discretion for the common pleas court to find the SPBR's decision was based on reliable, probative, and substantial evidence and Saadey's third argument within this assignment of error is meritless.
In his final argument, Saadey claims the time limit described in Section 5.4 of the SAP violates Ohio's statutory and administrative law. He begins by claiming Section 5.4 of the SAP violates Ohio Adm. Code123:1-76-05(A). That section provides:
"The individual to be tested shall be instructed to report to the collection site as soon as possible after the testing order is given, but not later than thirty-six hours, or as required by federal law." Id.
According to Saadey, this Administrative Code provision states an individual has thirty-six hours to report for a drug test and an employer may not require an employee to report for testing in a shorter period of time. However, on its face, the statute clearly is a maximum time limit, not a minimum time limit. Accordingly, it does not violate Ohio Adm. Code123:1-76-05 for the MCEO to require Saadey report for testing within four hours after the testing order was given.
Saadey next argues the Administrative Code requires either a positive test result or an affirmative refusal by the employee to take the test before an employer can take disciplinary actions. According to Saadey, an employer may not conclusively presume a positive test result. However, Ohio Adm. Code 123:1-76-11(D) allows disciplinary actions as stipulated in a CBA when an employee refuses to comply with a properly ordered drug test. That discipline may include the full range of disciplinary actions, including removal. Ohio Adm. Code 123:1-76-11(C). Contrary to Saadey's claims, the Administrative Code allows an employer to terminate an employee when the employee does not comply with the drug testing provisions of the applicable CBA.
Even if the Revised Code and/or Administrative Code were as Saadey claims, a CBA entered into pursuant to R.C. Chapter 4117 prevails over a conflicting law on matters of wages, hours, or terms and conditions of employment unless such law falls within one of the exceptions listed in R.C. 4117.10(A). State ex rel. Rollins v. Board of Education forCleveland Heights City School Dist. (1988), 40 Ohio St.3d 123,532 N.E.2d 1289, rehearing denied 41 Ohio St.3d 717, 535 N.E.2d 314. As the Twelfth District explained:
"A fair reading of Rollins indicates that unless otherwise excepted by R.C. 4117.10 (A), provisions in a collective bargaining agreement arrived at mutually should not be narrowly construed against either party. Instead, when parties to a collective bargaining agreement have negotiated a provision pertaining to wages, hours, or terms and conditions of employment and there is a conflict either with the express language or the judicial interpretation given to a similar provision of the Revised Code, the interpretation of the agreement prevails." Fieldsv. Ariss, (Aug. 28, 2000) 12th Dist. No. CA2000-04-035.
Although there are many exceptions to the general rule that CBA's prevail over conflicting law in R.C. 4117.10(A), none of those exceptions apply to Saadey's situation. Thus, the drug testing and disciplinary provisions of the CBA apply to Saadey. His final argument is also meritless.
In conclusion, although Saadey argues the common pleas court erred in numerous ways, this court may only reverse the decision if we conclude the common pleas abused its discretion when it found the SPBR's decision was based upon reliable, probative and substantial evidence. In this case, the LCA Saadey signed was a part of the disciplinary process contemplated by the CBA. There was evidence showing Saadey failed to report for drug testing within the time described by the CBA and he did not adequately explain his failure. No statutory or regulatory law prevented the CBA from requiring he take the test within the described time limit. Accordingly, we hold the common pleas court did not abuse its discretion. Saadey's sole assignment of error is meritless. The decision of the common pleas court is affirmed.
Vukovich, P.J., concurs.
Waite, J., concurs.